**In re Willie M. GOVAN, Debtor.**

**Bankruptcy No. 91–40971 (13).**

United States Bankruptcy Court,
N.D. Alabama.

April 24, 1992.

Harvey B. Campbell, Talladega, Fla., for debtor.

Harold H. Goings, Birmingham, Ala., for creditor.

## OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

The above-styled case is pending before the Bankruptcy Court under title 11, chapter 13, United States Code, having been commenced by the debtor's voluntary petition filed on April 8, 1991. On February 5, 1992, this case came before the Court for a hearing on confirmation of the amended plan and J.I. Kislak Mortgage Service Corporation's (hereinafter, "J.I. Kislak") objection to said plan. After receiving evidence, the Court accepted written arguments and written legal briefs from the debtor and J.I. Kislak. The Court took the proposed confirmation and the objection thereto under advisement.

J.I. Kislak holds a second mortgage on the debtor's principal residence. J.I. Kislak's objection is based upon its interpretation of 11 U.S.C. § 1322(b)(5) and its interpretation of the requirements of *Jim Walter Homes, Inc. v. Saylors*, 869 F.2d 1434 (11th Cir.1989). J.I. Kislak objects because the plan does not provide for payments to cure the arrearage within a reasonable time and provide for the debtor to make current regular monthly contract payments. The debtor contends that the plan should be confirmed, pursuant to 11 U.S.C. § 1322(b)(2), upon payment in full of J.I. Kislak's allowed secured claim along with the contract interest rate in installments equal to the contract monthly payments. For the reasons set out below, the Court finds that the requirements of 11 U.S.C. § 1322(b)(5) are not applicable and the plan is confirmed.

## I.

### JURISDICTION

The Court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B) and (L).

## II.

### FINDINGS OF FACT

Debtor executed a note and second mortgage on November 1, 1984. The mortgage placed a lien on her principal residence. The note and mortgage were subsequently assigned to J.I. Kislak. A first mortgage, on the premises, was previously given to Farmers Home Administration. Debtor filed a voluntary petition under chapter 13 of title 11, United States Code, on August

19, 1988. The chapter 13 case was converted to a chapter 7 case and the debt owed to J.I. Kislak was discharged on August 3, 1989, along with other personal obligations of the debtor. Eleven months later, on July 13, 1990, J.I. Kislak began foreclosure proceedings, prior to the foreclosure sale, the debtor filed a second chapter 13 case on August 16, 1990. J.I. Kislak filed a motion for relief from automatic stay in the second bankruptcy case, but no order was ever entered on said motion. The case, however, was ultimately dismissed on the motion of the standing trustee on March 8, 1991. On March 27, 1991, J.I. Kislak again commenced foreclosure proceedings. The present chapter 13 case was filed on April 8, 1991.

In her initial plan, the debtor proposed that the trustee make monthly payments to J.I. Kislak during the term of the plan, and the arrearage would be cured over a sixty-month period. Citing inordinate delay, multiple filing of petitions, and bad faith, J.I. Kislak objected to confirmation. At the confirmation hearing on September 4, 1991, the Court considered J.I. Kislak's objections and concluded, as a matter of law, that the debtor was eligible to file the petition based on recent Supreme Court authority. *Johnson v. Home State Bank*, 501 U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). The Court, however, denied confirmation based on the fact that curing the arrearage over sixty months was not within a reasonable time. 11 U.S.C. § 1322(b)(5).

On the date of the order for relief, the first mortgage owed to Farmers Home Administration equalled $7,450.00, and the second mortgage owed to J.I. Kislak totalled $8,007.24. J.I. Kislak filed a claim for $8,821.30 and alleged that said amount represented a prepetition arrearage. Debtor filed a contest of J.I. Kislak's claim and sought to bifurcate the claim. 11 U.S.C. § 506(a). On November 6, 1991, the Court considered the contest of claim and valued the residence at $12,000.00. With a balance on the debt secured by a first mortgage of $7,450.00, there was a difference of $4,550.00 to be secured by J.I. Kislak's second mortgage. Consequently, the debtor's contest of J.I. Kislak's claim was sustained, but only to the extent that the claim purported to be secured in an amount exceeding $4,550.00.

The debtor amended her plan following the order sustaining the contest of claim of J.I. Kislak and proposed to pay its entire allowed secured claim. Furthermore, the debtor proposed an interest factor compensation based on the contract interest rate, payable in installments equal to the monthly contract payments. Based on the debtor's projected plan, the allowed secured claim would be paid in less than 36 months. J.I. Kislak's unsecured claim along with all other allowed unsecured claims, would be paid a pro rata distribution, estimated to be approximately ten percent of the claims. The first mortgage to Farmers Home Administration would continue to be paid directly by the debtor. J.I. Kislak objected to confirmation of the amended plan and asserted that the plan fails to satisfy the requirements of 11 U.S.C. § 1322(b)(5).[1] The standing trustee recommended confirmation of the amended plan.

### III.

### CONCLUSIONS OF LAW

#### A

■ On the objection of lack of good faith, primarily asserted against the initial plan, J.I. Kislak improperly assumes that successive filings of a bankruptcy petition constitutes bad faith as a matter of law. The Bankruptcy Code, however, does not condition eligibility to filing a chapter 13 petition after filing prior chapter 13 petitions. The Supreme Court in fact held that

---

**1.**  (b) Subject to subsections (a) and (c) of this section, the plan may—
(5) [N]otwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.
11 U.S.C. § 1322(b)(5).

a chapter 13 petition following a chapter 7 discharge is not disallowed by the Bankruptcy Code. *Johnson v. Home State Bank*, 501 U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Even though serial filings do not adversely affect the eligibility of the debtor, the fact of successive filings should be considered as a factor when the Court determines the issue of good faith. A chapter 13 plan shall be confirmed if the mandatory provisions of 11 U.S.C. § 1325 are satisfied. Specifically, section 1325(a)(3) requires that the plan be proposed in good faith. Because Congress provided no guidance in the definition of good faith, judicial standards must be applied. Controlling case law in this circuit has set forth such standards when determining good faith. *Kitchens v. Georgia R.R. Bank & Trust Co.*, 702 F.2d 885 (11th Cir.1983).[2] In reviewing the good faith factors, the Court makes the following additional findings of fact:

(1) As to the amount of income; the debtor offered all of her disposable income to fund the proposed plan. The debtor is a widow whose primary source of income consists of disability and social security assistance. Said benefits total $425.00 per month and is supplemented with whatever help her children might provide. In her amended plan, the debtor proposes for the standing trustee to pay $158.73 per month in order to satisfy the second mortgage.

(2) As to the living expenses of the debtor and her dependents; the debtor has no dependents and she limits her monthly expenses, including the payment on the first mortgage, to $471.00.

(3) As to the attorney's fees; the amount of attorney's fees has not been set by the Court. A fee in excess of the standard fee of $450.00 can, however, be expected in this case because of the litigation with J.I. Kislak.

(4) As to the duration of the plan; depending upon the amount of attorney's fees awarded, the plan is expected to extend between 36 and 48 months.

(5) As to the motivations and the sincerity of the debtor; the debtor's motivation is very clear. The debtor is attempting to remain in her principal residence.

(6) As to the magnitude of the debtor's endeavor; the debtor has demonstrated a remarkable degree of effort in this case. Pending an order on confirmation, the debtor is current on her first mortgage payments and on her $206.00 per month payment to the trustee.

(7) As to her income; besides the disability and social security remuneration, the debtor is unable to earn additional income. The social security and disability payments are unlikely to fluctuate.

(8) As to extraordinary occurrences; the debtor has not required inordinate medical expenses in the past. Because of her advanced age, however, higher than average medical expenses appear a reasonable possibility. There are no other special circumstances other than those identified above.

(9) As to prior filings; the debtor has filed two prior chapter 13 petitions. The first was converted to a chapter 7 case and resulted in a discharge of all the debtor's personal obligations. The second chapter 13 case was short-lived.

(10) As to the circumstances of contracting the J.I. Kislak debt; the debtor entered into the debt in 1984 when her husband was alive. The payments remained current for a number of years prior to the difficulties which caused the first petition to be filed on August 18, 1988.

(11) The plan proposed by the debtor would not impose any burden on the trustee.

(12) The unsecured creditors will receive an insignificant dividend in this case.

(13) The unsecured claims will be discharged upon completion of the plan. None of these claims would be nondischargeable in a chapter 7 case.

---

**2.** *But see In re March*, 83 B.R. 270 (Bankr. E.D.Pa.1988) ("to a large extent the continued validity of those cases which broadly defined good faith under [section] 1325(a)(3) to include an inquiry into a wide variety of factors was undetermined upon passage of the 1984 amendments to the Bankruptcy Code.") *Id.* at 274.

(14) All of the information provided by the debtor in the statement of debts and expenses has proven to be accurate. Furthermore, there is no indication of intent to mislead the Court.

In the instant case, the first plan proposed by the debtor provided for the mortgage arrearage to be cured by monthly payments, from the trustee, over a term of between 55 to 60 months. At a confirmation hearing on September 4, 1991, the Court denied confirmation when it concluded that a 55 to 60 month period to cure the arrearage was not a reasonable time to satisfy the requirements of the Code. 11 U.S.C. § 1322(b)(5); *See also In re Chavez*, 117 B.R. 730 (Bankr.S.D.Fla.1990); *Fleet Finance, Inc. v. Randolph*, 102 B.R. 902 (Bankr.S.D.Ga.1989).

■ Following the denial of confirmation, the debtor filed the amended plan which is currently under consideration by this Court. After reviewing each of the mandatory elements for confirmation of a chapter 13 plan, the Court concludes that all of the requisite ingredients are satisfied. 11 U.S.C. § 1325(a). Under the provisions of paragraph (5) of subsection (a), J.I. Kislak will receive as much as it would receive under a liquidation under chapter 7. Probably the most difficult determination concerns the feasibility of the plan. 11 U.S.C. § 1325(a)(6). The debtor, however, has made all payments to the trustee and to the holder of the first mortgage since this petition was filed. As such, the debtor has demonstrated that she is willing and able to make the effort to achieve full compliance with her proposed plan.

### B

■ The dispositive issue on confirmation of the amended plan involves an interpretation of the relationship between 11 U.S.C. §§ 506(a) and 1322(b)(2). Conversely, J.I. Kislak asserts that the provisions of 11 U.S.C. § 1322(b)(5) prevent confirmation. Section 1322(b)(5), however, applies only to claims in which the last payment is due after the date of the final payment of the plan. Two facts prevent application of section 1322(b)(5). First, the note provides for the last payment on November 15, 1994. The plan is projected to extend beyond November of 1994. Secondly, the plan provides for the entire amount of J.I. Kislak's allowed secured claim to be paid in full, plus the contract interest rate, within the term of the plan. Payments under the plan to J.I. Kislak, in the amount of $158.73, equal those scheduled in the mortgage note. The successful contest, and subsequent bifurcation of J.I. Kislak's claim under the provisions of 11 U.S.C. § 506(a) eliminated the application of section 1322(b)(5). If the entire allowed secured claim is paid during the term of the plan, 11 U.S.C. § 1322(b)(5) is simply not applicable. *In re Ward*, 129 B.R. 664 (Bankr.W.D.Okla.1991).

J.I. Kislak further objects to confirmation based on the argument that the debtor must reinstate the entire indebtedness and make current monthly payments, together with payments to cure all arrearages within a reasonable time in order to adequately provide for the holder of the second mortgage in this case. *Jim Walter Homes, Inc. v. Saylors*, 869 F.2d 1434, 1439 n. 4 [3] (11th Cir.1989) Because the proposition cited by J.I. Kislak is nothing more than dictum contained in the footnote of an opinion, the Bankruptcy Court rejects J.I. Kislak's position. Specifically, J.I. Kislak's propounded argument is not the law in this circuit.

■ *Johnson v. Home State Bank*, 501 U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) held that the mortgage lien is a "claim" that may be provided for in a chapter 13 case. The Bankruptcy Code allows a discharge of personal obligations in a chapter 7 case and then the payment of the mortgage lien in a subsequent chapter 13 case.[4] The facts of *Johnson* also support the action of the debtor in this case. In

3. "If all goes well and Saylors satisfies the arrearage while maintaining his monthly mortgage payments, he probably will find himself in the position of any non-bankrupt nonrecourse debtor. He will be required by state law to continue making his mortgage payments until the entire debt is satisfied or risk losing his home."

4. The so-called chapter 20 case.

*Johnson,* the debtors had a note in an amount over double the value of the real estate. After the debtor obtained a discharge from personal liability in a chapter 7 case, the holder of the mortgage obtained an *in rem* judgment in state court for the value of the real estate. The subsequent chapter 13 case provided for payments of the *in rem* judgment (value of collateral) during the life of the plan. In this case, the debtor has accomplished the same result as the debtor in *Johnson* by successfully bifurcating the creditor's claim. Consequently, J.I. Kislak's interpretation of *Saylors,* 869 F.2d 1434 (11th Cir.1989) contradicts the holding of the Supreme Court in *Johnson.*

The facts of *Saylors* are also readily distinguishable from the facts in the instant case. In *Saylors,* the plan provided for the long term mortgage debt to be paid under the provisions of 11 U.S.C. § 1322(b)(5). It did not consider the issues in this case of bifurcation under 11 U.S.C. § 506(a) and payment of the allowed secured claim under 11 U.S.C. § 1322(b)(2). A recent Supreme Court decision, *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) appears to conflict with the Court's holding in *Johnson, supra,* but it very specifically does not apply to a chapter 13 case. *Dewsnup,* 112 S.Ct. at 785 n. 3.

Even though there is some conflict, the majority of courts have allowed a debtor to use 11 U.S.C. § 506(a) to bifurcate a debt into a secured claim and an unsecured claim. Thereafter, section 1322(b)(2) applies to prevent modification of "a claim secured only by a security interest in real property that is the debtor's principal residence...." If the allowed secured claim is not paid within the term of the plan, then section 1322(b)(5) would apply to require that the arrearage be cured within a reasonable time and that current monthly payments be made. The remaining unsecured claim can be treated in a similar fashion as all other unsecured claims. *Eastland Mortgage Co. v. Hart,* 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3rd Cir.1990); *Hougland v. Lomas & Nettleton Co.,* 886

F.2d 1182 (9th Cir.1989); *In re Bellamy,* 132 B.R. 810 (D.Conn.1991); *Wright v. C & S Family Credit, Inc.,* 128 B.R. 838 (Bankr.N.D.Ga.1991); *Franklin v. Union Mortgage Co., Inc.,* 126 B.R. 702 (Bankr. N.D.Miss.1991); *In re Ward,* 129 B.R. 664 (Bankr.W.D.Okla.1991).

■ The court in *Hougland,* held that Section 1322(b)(2) only prohibited the modification of an allowed secured claim. *Id.,* 886 F.2d 1182 (9th Cir.1989). The Third Circuit, in concurrence with the Ninth Circuit, held that "the Supreme Court has recently explained that section 506(a) 'provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.'" *Wilson v. Commonwealth Mortgage Co.,* 895 F.2d 123, 125 (3rd Cir.1990) *citing United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 238, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). The *Wilson* court closely reviewed the legislative history of section 1322 in reaching the conclusion that a debt could be bifurcated. The *Wilson* case also held that all claims, except for allowed secured claims secured by the principal residence, could be modified by section 1322(b)(2). This prohibition of modification does not apply to the unsecured claim arising from the undersecured mortgage debt. A good review of statutory construction, legislative history and public policy in support of this conclusion is found in *Federal Home Loan Mortgage Corp. v. Bellamy,* 132 B.R. 810 (D.Conn.1991) and in *Goins v. Diamond Mortgage Corp.,* 119 B.R. 156 (Bankr.N.D.Ill.1990).

*Eastland Mortgage Co. v. Hart,* 923 F.2d 1410 (10th Cir.1991) similarly concluded that bifurcation of a mortgage debt is not a modification which is prohibited under section 1322(b)(2). The allowed secured claim is not modified when the plan pays the contract monthly payment together with the contract interest rate. Under these conditions, the plan merely restates the mortgage debt to the value of the residence and is not a modification. *Bellamy,* 132 B.R. at 810. An excellent analysis is found in *Franklin v. Union Mortgage Co.,* 126

B.R. 702 (Bankr.N.D.Miss.1991). Following a thorough analysis, the *Franklin* court concluded that the debtor could bifurcate the debt secured exclusively by the principal residence under section 506(a). The unsecured claim could then be modified and treated as all other unsecured claims. The allowed claim secured by the debtor's principal residence could not be modified in contravention of section 1322(b)(2). Only when the payments necessary to satisfy the allowed secured claim extend beyond the term of the plan do the mandates of section 1322(b)(5) require that the debtor maintain current monthly payments and cure defaults within a reasonable time. The combination of sections 506(a) and 1322(b)(2) allows the debtor to reduce the maturity date of the mortgage obligation, "to a point in time that will coincide with the conclusion of the payment of the allowed secured claim at the regular monthly installment rate set forth in the mortgage instrument." *Franklin* at 126 B.R. 713.

The Eleventh Circuit Court of Appeals has not yet addressed this issue. A good analysis of the law which reaches a conclusion consistent with all of the above authority is found in *Wright v. C & S Family Credit, Inc.*, 128 B.R. 838 (Bankr.N.D.Ga. 1991).

## IV.

### CONCLUSION

When considering the totality of the circumstances, the debtor has filed this petition in good faith. The first petition resulted in a discharge of the personal obligation of the debtor. The second petition was short-lived and did not present unreasonable delays to the creditors. The third and current petition proposes to pay all allowed secured claims within approximately 48 months. The first mortgage will be paid directly by the debtor. The second mortgage will be paid by the trustee in installments equal to the contract payment together with interest at the contract interest rate. Even though the holders of unsecured claims will receive a small dividend in this case, the debtor is providing all of her disposable income (and more) and is making her very best effort to pay as much as she can to her creditors.

J.I. Kislak will receive as much under this plan as it would if it were to foreclose on the real estate. Its debt has been bifurcated into a secured claim and an unsecured claim. The secured claim is not modified so the provisions of section 1322(b)(2) are satisfied. The allowed secured claim will be paid in full during the term of the plan; therefore, the requirements of section 1322(b)(5) do not apply. A separate order will be entered consistent with this opinion confirming the plan as proposed by the debtor.